1  Geoffrey M. Trachtenberg (State Bar No. 019338)
   gt@ltinjurylaw.com
2  LEVENBAUM TRACHTENBERG, PLC
   362 North 3rd Avenue
3  Phoenix, Arizona 85003
   Tel: 602.271.0183
4  Fax: 602.271.4018

5  Rafey S. Balabanian*
   rbalabanian@edelson.com
6  Ari J. Scharg*
   ascharg@edelson.com
7  EDELSON PC
   350 North LaSalle Street, Suite 1300
8  Chicago, Illinois 60654
   Tel: 312.589.6370
9  Fax: 312.589.6378

10 * *Pro hac vice* admission to be sought.

11 *Counsel for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Catherine Houser, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Paramount Equity Mortgage, LLC, a California limited liability company,<br><br>　　　　　　Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Catherine Houser brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Paramount Equity Mortgage, LLC ("PEM") to stop its practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

**NATURE OF THE ACTION**

1. Defendant PEM is a well-known mortgage company that claims to have "helped over 50,000 customers obtain nearly $9 billion in [home] loans."

2. Unfortunately for consumers, in an attempt to promote its services, Defendant PEM conducted (and continues to conduct) a wide scale telemarketing campaign and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

4. The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

5. Plaintiff Catherine Houser is a natural person and citizen of the State of Arizona.

6. Defendant Paramount Equity Mortgage, LLC is a California limited liability company with a principal place of business located at 8781 Sierra College Boulevard, Roseville, California 95661. Defendant conducts business throughout this District, the State of Arizona, and the United States.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

8. The Court has personal jurisdiction over Defendant because it is registered to conduct business in this District (as Arizona Corporation Commission No. R17718501), it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Additionally, this Court has personal jurisdiction over Defendant because it maintains an office in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business transactions within this District, maintains an office in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

**COMMON FACTUAL ALLEGATIONS**

10. Defendant PEM is a residential mortgage company.

11. Unfortunately for consumers, Defendant utilized (and continued to utilize) a sophisticated telephone dialing system to call homeowners *en masse* promoting its services.

3

12. Defendant PEM obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers and by capturing numbers used to call or submit web inquiries to Defendant.

13. Unfortunately, in Defendant's overzealous attempts to market its services, it placed (and continues to place) phone calls to consumers that never provided consent to call and to consumers that it had no relationship with. Worse yet, Defendant placed (and continues to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

14. Not surprisingly, these practices have led to significant backlash from consumers:[1]

- "These clowns have been calling for months and leaving no messages. We blocked them with the phone, so it now rings once and tells them they are blocked. Since 4/11/14, they have called us 16 times, usually about 3 times a day, starting as early as 7:11 AM. The caller ID says it is Paramount Equity, some mortgage company. Has nothing to do with us, and I can assure them that I'll never use Paramount Equity for anything."[2]
- "Multiple calls a week, sometimes multiple times a day! I have asked multiple times to please STOP calling my house and the person on the other end actually laughed when I asked this. Sometimes when I pick up phone, there is no one even there. They keep trying to get me to refinance

---

[1]   *See*, *e.g.*, 800notes for 562-262-0502, http://800notes.com/Phone.aspx/1-562-262-0502 (last visited February 10, 15); 800notes for 888-234-9939, http://800notes.com/Phone.aspx/1-888-234-9939 (last visited February 10, 15).

[2]   800notes for 928-208-4669, http://800notes.com/Phone.aspx/1-928-208-4669 (last visited February 10, 15).

4

        my house. I always tell them that I don't want to refinance and to STOP calling!!! So aggravating! I unfortunately can't block calls with my phone."[3]

- "I have gotten 5-8 calls a day, 6 days a week for several weeks! Caller ID says it's from Paramount Equity, which [i]s ridiculous since I don't have a mortgage. How can they [b]e stopped?"[4]
- "No message left, I had to call it back to find out who it was. We've never done business with this company and are on the do not call list, I wouldn't do business with them now given how careless they are about people who don't want to be called!"[5]

15. Defendant knowingly made (and continues to make) these telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFF CATHERINE HOUSER

16. Starting in or around October 1, 2014, Plaintiff Houser began receiving calls on her landline telephone from the phone number (602) 465-7511.

17. Initially, Plaintiff did not answer these calls. However, after the calls persisted Plaintiff finally started answering them in order to determine their source. Oftentimes when Plaintiff would pick up, the calls would automatically disconnect.

---

[3] 800notes for 503-272-6809, http://800notes.com/Phone.aspx/1-503-272-6809 (last visited February 10, 15).

[4] 800notes for 541-203-7140, http://800notes.com/Phone.aspx/1-541-203-7140 (last visited February 10, 15).

[5] 800notes for 425-200-0540, http://800notes.com/Phone.aspx/1-425-200-0540 (last visited February 10, 15).

18. Defendant subsequently received a call from "Johnny" (at (623) 465-7511) who stated that he was calling from Paramount Equity regarding refinancing her house and identified his company's website as paramountequity.com.

19. Plaintiff does not have a relationship with Defendant, has never provided her telephone number directly to Defendant, or requested that Defendant place calls to her or offer her its services. Simply put, Plaintiff has never provided her prior express consent to Defendant to place calls to her and has no business relationship with Defendant.

20. Plaintiff's landline telephone number has been registered with the National Do Not Call Registry since May 2014, for the express purpose of avoiding telemarketing calls just like those alleged in this case.

21. Nonetheless, Defendant placed over ten unsolicited phone calls to Plaintiff's telephone.

22. Defendant is and was aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

## CLASS ALLEGATIONS

23. **Class Allegations**: Plaintiff Houser brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and a class defined as follows (the "Class"):

> All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3)

6

1 persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

24. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records.

25. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

    (c)    Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry; and

    (d)    Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

26. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

27. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

28. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

29. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

8

### FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

30. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

31. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

32. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

33. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

34. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures

9

instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

35.  Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to

10

not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

36. Defendant made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a record of consent to place telemarketing calls to them.

37. Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

38. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

39. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Catherine Houser, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Catherine Houser as the representative of the Class, and appointing her counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**CATHERINE HOUSER**, individually and on behalf of all others similarly situated,

Dated: February 10, 2015

/s/ Geoffrey M. Trachtenberg
Geoffrey M. Trachtenberg (019338)
gt@ltinjurylaw.com
LEVENBAUM TRACHTENBERG, PLC
362 North 3rd Avenue
Phoenix, Arizona 85003
Tel: 602.271.0183
Fax: 602.271.4018

Rafey S. Balabanian*
rbalabanian@edelson.com
Ari J. Scharg*
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

* *Pro hac vice* admission to be sought.

*Counsel for Plaintiff and the Putative Class*